IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| DANIEL ERIC PETTIT,<br>  Debtor.<br><br>DMU, IOWA LAND, LLC—SERIES A;<br>AND DMU, IOWA LAND, LLC—SERIES C,<br>  Plaintiffs,<br>v.<br><br>DANIEL ERIC PETTIT,<br>  Defendant. | Case No. 24-01387-lmj7<br><br>CHAPTER 7<br><br>Adv. Pro. _____<br><br>**COMPLAINT OBJECTING TO DISCHARGE PURSUANT TO 11 U.S.C. §§ 523(a)(2), (4), AND (6); AND 11 U.S.C.§ § 727(a)(2), (3), (4), AND (5)** |

Plaintiffs, DMU, Iowa Land, LLC—Series A ("**Series A**") and DMU, Iowa Land, LLC—Series C (individually "**Series C**" and together with Series A, "**DMU**"), state the following as their Complaint Objecting to Discharge in the above-captioned matter:

### VENUE/JURISDICTION

1. Plaintiffs are Iowa series limited liability companies.

2. Defendant filed a Voluntary Petition for Relief pursuant to Chapter 7 of Title 11 of the U.S. Code with this Court on September 25, 2024 (the "**Petition Date**"), which is captioned *In re: Daniel Eric Pettit,* Bankr. S.D. Iowa No. 24-01387-lmj7.

3. This Court has jurisdiction of the above-captioned adversary proceeding pursuant to 28 U.S.C. Section 1334(b).

4. This is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2)(I) and (J). Plaintiff consents to entry of final orders or judgment by this Court in the above-captioned matter.

5. Venue is appropriate in this Court pursuant to 28 U.S.C. Section 1409(a).

### LOAN RELATIONSHIP

1

6. Plaintiff incorporates Paragraphs 1-5 as if fully restated.

7. Debtor was at all relevant times the manager, and sole member, of DB Booneville, L.L.C., an Iowa limited liability company ("**DB Booneville**").

8. At Defendant's request, Plaintiffs made a loan, commonly referred to as a bridge loan, to DB Booneville for the purpose of acquiring two adjacent parcels of real estate located to the north of the new Des Moines University campus on Booneville Road in Dallas County, Iowa.

9. As described in more detail below, Series A made a loan for the purpose of acquiring one parcel, and Series C made a loan for the purpose of acquiring the other parcel.

## SERIES A LOAN

10. On or about January 13, 2021, for consideration received, DB Booneville executed and delivered to Series A a promissory note in the principal amount of $5,550,000.00 (the "**Series A Note**").

11. A true and correct copy of the Series A Note is attached as **Exhibit 1** and incorporated by reference.

12. The Series A Note matured and became due and payable in full on September 30, 2021. DB Booneville failed to pay the Series A Note when it matured and is now in default thereunder.

13. DB Booneville has failed to pay its obligations under the Series A Note.

14. DB Booneville is indebted to Series A pursuant to the Series A Note in the amount of $4,054,048.22 (consisting of $2,028,000.00 in principal and fees, and $2,026,048.22 in accrued interest), with interest continuing to accrue thereon from and after April 21, 2023.

15. Series A is the owner and holder of the Note.

16. On or about January 13, 2021, Daniel E. Pettit, and Rachael L. Pettit, both individually and as trustee of both the Daniel E. Pettit Revocable Trust and that Rachel L. Pettit Revocable Trust (collectively the "**Guarantors**") executed and delivered to Series A an unlimited guaranty (the "**Series A Guaranty**").

17. Pursuant to the terms of the Series A Guaranty, the Guarantors, jointly and severally, guarantied the performance of all of DB Booneville's obligations under the Series A Note.

18. A true and correct copy of the Series A Guaranty is attached as **Exhibit 2** and incorporated by reference.

19. Series A is the holder of the Series A Guaranty, and has not released or transferred the Series A Guaranty.

20. Despite Series A's demands, Guarantors, including Defendant, failed to honor their respective obligations and pay Series A the amounts owing under the Series A Note.

21. The Series A Note and the Series A Guaranty provide that DB Booneville and Guarantors, jointly and severally, will reimburse Series A for legal fees and expenses Series A incurs enforcing their obligations under the Series A Note and Series A Guaranty.

22. DB Booneville executed and delivered to Series A a mortgage and security agreement on or about January 13, 2021 (the "**Series A Mortgage**") for the purpose of securing all of its obligations to Series A, including, but not limited to, its obligations under the Series A Note.

23. A true and correct copy of the Series A Mortgage is attached as **Exhibit 3** and incorporated by reference.

24. The Series A Mortgage grants Plaintiff a mortgage interest in the following described real estate (the "*Series A Real Estate*"):

> West ½ of the NW ¼ of the SE ¼ of Section 23, Township 78 North, Range 26 West of the 5th P.M., Dallas County, Iowa.

25. The Series A Mortgage was recorded with the Dallas County Recorder's Office on January 15, 2021 in Book 2021, Page 1684 of said Recorder's official records.

26. Series A is the holder and owner of the Series A Mortgage.

27. On or about January 13, 2021, Defendant, among others, executed and delivered a Security Agreement to Series A (the "*Series A Security Agreement*").

28. The Series A Security Agreement grants Series A a valid and perfected security interest in all personal property assets of Defendant (the "*Collateral*") for the purpose of security payment and performance of Defendant's obligations pursuant to, among other things, the Series A Guaranty.

29. A true and correct copy of the Series A Security Agreement is attached as **Exhibit 4** and incorporated by reference.

30. Series A perfected its security interest by filing a UCC1 Financing Statement with the Iowa Secretary of State on January 14, 2021.

SERIES C LOAN

31. On or about March 1, 2021, for consideration received, DB Booneville executed and delivered to Series C a promissory note in the principal amount of $9,466,667.00 (individually the "*Series C Note*" and together with the Series A Note, the "*Notes*").

32. A true and correct copy of the Series C Note is attached as **Exhibit 5** and incorporated by reference.

33. The Series C Note matured and became due and payable in full on September 30, 2021. DB Booneville failed to pay the Series C Note when it matured, and is now in default thereunder.

34. DB Boonville has failed to pay its obligations under the Series C Note.

35. DB Booneville is indebted to Series C pursuant to the Series C Note in the amount of $17,612,055.63 (consisting of $8,955,820.64 in principal and fees, and $8,656,234.99 in accrued interest), with interest continuing to accrue thereon from and after April 21, 2023.

36. Series C is the owner and holder of the Note.

37. On or about March 1, 2021, Guarantors executed and delivered to Series C an unlimited guaranty (individually the "**Series C Guaranty**" and together with the Series A Guaranty, the "**Guaranties**").

38. Pursuant to the terms of the Series C Guaranty, the Guarantors, jointly and severally, guarantied the performance of all of DB Booneville's obligations under the Series C Note.

39. A true and correct copy of the Series C Guaranty is attached as **Exhibit 6** and incorporated by reference.

40. Series C is the holder of the Series C Guaranty, and has not released or transferred the Series C Guaranty.

41. Despite Series C's demands, Guarantors, including Defendant, have failed to honor their respective obligations and pay Series C the amounts owing under the Series C Note.

42. The Series C Note and Series C Guaranty provide that DB Booneville and Guarantors, jointly and severally, will reimburse Series C for legal fees and expenses Series C incurs enforcing their obligations under the Series C Note and Series C Guaranty.

43. DB Booneville executed and delivered to Series C a mortgage and security agreement on or about March 1, 2021 (individually the "*Series C Mortgage*" and together with the Series A Mortgage, the "*Mortgages*") for the purpose of securing all of its obligations to Series C, including, but not limited to, its obligations under the Series C Note.

44. A true and correct copy of the Series C Mortgage is attached as **Exhibit 7** and incorporated by reference.

45. The Series C Mortgage grants Plaintiff a mortgage interest in the following described real estate (individually the "*Series C Real Estate*" and together with the Series A Real Estate, the "*Real Estate*"):

    The NE ¼ of the SW ¼ in Section 23, Township 78 North, Range 26 West of the 5th P.M., Dallas County, Iowa, except that part deeded to the City of West Des Moines recorded in Book 2011 page 6691.

46. The Series C Mortgage was recorded with the Dallas County Recorder's Office on March 3, 2021 in Book 2021, Page 6344 of said Recorder's official records.

47. On or about March 1, 2021, Defendant, among others, executed and delivered a Security Agreement to Series C (individually the "*Series C Security Agreement*" and together with the Series A Security Agreement, the "*Security Agreements*").

48. The Series C Security Agreement grants Series C a valid and perfected security interest in the Collateral for the purpose of securing payment and performance of Defendant's obligations pursuant to, among other things, the Series C Guaranty.

49. A true and correct copy of the Series C Security Agreement is attached as **Exhibit 8** and incorporated by reference.

50. Series C perfected its security interest by filing a UCC1 Financing Statement with the Iowa Secretary of State on March 2, 2021.

DEFENDANT'S SCHEME FOR
CONSTRUCTION FINANCING

51. At some point, Defendant presented to DMU the opportunity for DB Booneville to obtain construction financing from Lincoln Savings Bank ("**LSB**") for the purpose of financing improvements on the Real Estate.

52. As part of the construction financing from LSB, LSB required DMU to subordinate its rights in the Real Estate pursuant to the Mortgages.

53. As part of the construction financing from LSB, Defendant represented to DMU that the proceeds of the construction financing would be used solely for the purpose of constructing improvements on the Real Estate. Defendant further represented to DMU that DB Booneville would establish an interest reserve account with LSB to be "locked" and solely used to backstop one year of interest expenses associated with the LSB loan (the "**Reserve Account**").

54. In reasonable and justifiable reliance on the representations of Defendant regarding the use of proceeds from construction financing, and regarding the Reserve Account, DMU executed a subordination agreement in favor of LSB.

55. As part of the construction financing, Defendant executed certain loan agreements with LSB on behalf of DB Booneville. Those loan agreements contained written promises that, among other things, the proceeds of financing obtained from LSB would be used solely for the purpose of constructing certain improvements on the Real Estate. The Loan Agreements also provide for the Reserve Account, which Defendant was not to access.

56. Defendant did not intend at the time he made these representations to DMU or LSB to use the construction financing from LSB for the purpose of constructing improvements to the Real Estate.

57. Instead, Defendant intended to divert nearly all of those proceeds to his personal use through sham invoices and shell companies.

58. The first nine draw requests Defendant submitted, and obtained, on behalf of DB Boonville totaled approximately $3,300,000. Defendant diverted all of these proceeds to his own personal use, and did not use these proceeds to construct improvements on the Real Estate.

59. This left DB Booneville with insufficient financing remaining available to complete the contemplated improvements on the Real Estate.

60. It also caused LSB to foreclose its mortgage on the Real Estate.

61. Defendant diverted these draw requests from the benefit of DB Booneville, and from the improvement of the Real Estate, through shell companies under the control of Defendant such as PDR Architecture, LLC, Pettit Development, Village at Sugar Creek, and Encompass Holdings.

62. These draw requests occurred between approximately April 1, 2021 and December 31, 2021, and perhaps longer.

63. Each draw request contained invoices or other documents that included a written representation that the draw requests were for costs of improvement on the Real Estate. These representations were false, which Defendant knew when he submitted them.

64. Defendant knew, and intended, that LSB would rely on these false representations to make advances. Defendant also knew, and either intended or knew it was substantially certain,

8

that as a result of the subordination agreement DMU executed at Defendant's request, these false representations would cause harm to Plaintiffs.

65. Further during the month of December 2022, Defendant engaged in a series of transfers that withdrew approximately $692,000.00 from the Reserve Account to his own personal benefit.

66. Defendant knew that these actions would harm Plaintiffs, and either intended that harm, or proceeded knowing harm to Plaintiffs would be substantially certain.

67. A November 2022 appraisal found that had the Real Estate been developed as promised, it would have had a value of approximately $18,000,000.00. That value has been decimated by the failure to complete improvements to the Real Estate, and the delay from the pending foreclosure proceedings.

68. As a proximate result of Defendant's actions, Plaintiffs have been harmed by: 1) diverting loan proceeds from the improvement of the Real Estate; 2) causing the development of the Real Estate to completely fail, which significantly devalued the Real Estate; and 3) causing delay. Defendant knew this result was substantially certain when he engaged in the above-described conduct.

COUNT I: 11 U.S.C. § 523(a)(2)(A)

69. Plaintiffs incorporate paragraphs 1-68 of their Complaint as if fully set forth herein.

70. Defendant knew his representations to Plaintiff regarding the use of loan proceeds from LSB, and the Reserve Account were false when he made them, as he did not intend to abide by those representations when he made them.

71. Defendant knew Defendant's express and implied representations regarding the use of the construction loan proceeds with each draw request were each materially false when Defendant made them.

72. Defendant's actions as set forth above were false pretenses, fraud, and false representations all as part of a scheme to defraud Plaintiffs and divert funds to Defendant's personal use.

WHEREFORE, pursuant to 11 U.S.C. § 523(a)(2)(A), Plaintiffs asks that this Court enter judgment in their favor, and against Defendant, excepting the obligations of Defendant to Plaintiffs from any discharge Defendant may receive in the above-captioned matter; and that this Court assess the costs of this action against Defendant.

### COUNT II: 11 U.S.C. § 523(a)(4): EMBEZZLEMENT

73. Plaintiffs incorporate Paragraph 1-72 of their Complaint as if fully set forth herein.

74. The loan proceeds and Reserve Account were entrusted to Defendant's control, through his signature authority on behalf of DB Booneville.

75. Defendant fraudulently appropriated that property from the use and benefit of DB Booneville, the purposes of the Reserve Account, and the improvement of the Real Estate, to his own personal use.

WHEREFORE, pursuant to 11 U.S.C. § 523(a)(4), Plaintiffs asks that this Court enter judgment in their favor, and against Defendant, excepting the obligations of Defendant to Plaintiffs from any discharge Defendant may receive in the above-captioned matter; and that this Court assess the costs of this action against Defendant.

### COUNT III: 11 U.S.C. § 523(a)(6): WILLFUL AND MALICIOUS DAMAGE TO PLAINTIFFS

76. Plaintiffs incorporate Paragraphs 1-75 of their Complaint as if fully set forth herein.

77. On or about January 25, 2022, Defendant executed a written financial statement that stated his net worth was $46,497,500.00, which included an on-line ammunition business, and a seed dealership.

78. Defendant's Schedules detail millions of dollars of personal property that he has sold, transferred, or simply given to others, consisting mostly of sports memorabilia, artwork, and furniture. Further, at his meeting of creditors held pursuant to 11 U.S.C. § 341, Defendant testified that he sold, transferred, or permitted others to take sports memorabilia; artwork, including a single paining worth $2,000,000; an NFT; jewelry, including a Rolex watch; equipment, including a lawn mower and "side by side" vehicle; and a "Mozart" signature.

79. Defendant's Schedules claim that in approximately two years' time, his $46,497,500 net worth had dwindled to holding total assets of merely $7,081.20.

80. The assets Defendant sold, transferred, or permitted others to take were all subject to Plaintiffs' perfected security interests.

81. By diverting assets subject to Plaintiffs' perfected security interests, and by diverting proceeds of the construction loan and Reserve Account, Defendant willfully and maliciously caused injury to the property of Plaintiffs—specifically the Collateral and the Real Estate.

82. Defendant knew he had no legal justification to misappropriate this property.

83. Defendant either desired to inflict injury on Plaintiffs, or knew Plaintiffs' injury was highly likely to result from his actions.

84. Defendant acted in conscious disregard of his duties, and without just cause or excuse.

85. The purpose, and unavoidable result, of Defendant's actions was damage to Plaintiffs.

WHEREFORE, pursuant to 11 U.S.C. § 523(a)(6), Plaintiffs ask that this Court enter judgment in their favor, and against Defendant, excepting the obligations of Defendant to Plaintiffs from any discharge Defendant may receive in the above-captioned matter; and that this Court assess the costs of this action against Defendant.

<u>COUNT IV: 11 U.S.C. § 727(a)(2): TRANSFER AND CONCEALMENT WITH INTENT TO HINDER, DELAY, OR DEFRAUD</u>

86. Plaintiffs incorporate Paragraphs 1-85 of their Complaint as if fully set forth herein.

87. Defendant testified as his meeting of creditors pursuant to 11 U.S.C. § 341 that he has transferred virtually all of his assets.

88. Defendant acknowledged having certain assets remaining at a safe in Las Vegas, Nevada, and at a location in Florida, which he did not disclose in his Schedules or Statement of Financial Affairs. However, Defendant refused to provide the location of those assets, and was not able to provide detail regarding the assets at each location.

89. Defendant's schedules do not reveal any property located in Las Vegas, Nevada or Florida.

90. Defendant also testified at his meeting of creditors pursuant to 11 U.S.C. § 341 that he held additional property in a garage in North Liberty, Iowa, and that he had certain equipment at a building at his former home in Johnston, Iowa, all of which Defendant also failed to disclose on his Schedules and Statement of Financial Affairs.

91. Defendant also testified at his meeting of creditors pursuant to 11 U.S.C. § 341 that within one year prior to the Petition Date, Defendant transferred thousands of dollars to a "friend" by the name of "Giovanni." Defendant testified this transfer was a "loan" Defendant made

to his friend, and that the "loan" has not been repaid. However, Defendant dis not disclose the "loan" owed to him as an asset on his Schedules.

92. Defendant also testified at his meeting of creditors pursuant to 11 U.S.C. § 341 that within one year prior to the Petition Date, Defendant transferred $10,000.00 to his mother to repay a loan he owed to her. Defendant did not disclose any loan repayments to his mother on his Statement of Financial Affairs.

93. Defendant engaged in a flurried scheme to transfer or hide his forty-six million dollar net worth on the eve of his bankruptcy.

94. Defendant made these transfers within one year of the Petition Date, with the intent to hinder, delay, or defraud creditors or his Chapter 7 bankruptcy trustee.

WHEREFORE, Pursuant to 11 U.S.C. § 727(a)(2), Plaintiffs asks that this Court enter judgment denying Defendant a discharge pursuant to 11 U.S.C. § 727(a) in the above-captioned case; and that this Court assess the costs of this action against Defendant.

## COUNT V: 11 U.S.C. § 727(A)(3): FAILURE TO KEEP RECORDS

95. Plaintiff incorporates Paragraphs 1-94 as if fully restated herein.

96. At his meeting of creditors pursuant to 11 U.S.C. § 341, Defendant was unable, or refused, to provide information regarding the disposition of his assets, and the location of his remaining assets. This includes, without limitation, disclosing that he transferred an undisclosed amount of crypto currency, but having no records or information regarding the amount or timing thereof. Defendant was also unable to explain the use of thousands of dollars of proceeds received from the sale or transfer of assets described above. Defendant claimed to have "lost" his business records when he moved out of his office.

97. To the extent Defendant cannot produce records relating to his financial affairs and businesses, including without limitation, bank statements and explanations of transfers and business activities, he has concealed, destroyed, or failed to keep or preserve records from which his financial condition or business condition might be ascertained.

WHEREFORE, Pursuant to 11 U.S.C. § 727(a)(3), to the extent Defendant cannot produce adequate financial records or documents, Plaintiffs asks that this Court enter judgment denying Defendant a discharge pursuant to 11 U.S.C. § 727(a) in the above-captioned case; and that this Court assess the costs of this action against Defendant.

## COUNT VI: 11 U.S.C. § 727(A)(4): FALSE OATH

98. Plaintiff incorporates Paragraph 1-97 as if fully restated.

99. Defendant's testimony at his meeting of creditors held pursuant to 11 U.S.C. Section 341 is inconsistent with his Schedules and Statement of Financial Affairs filed in the above-captioned matter as it relates to material issues concerning the extent of his assets, the location of his assets, and his transfers of assets. Either Defendant's testimony at his meeting of creditors, or his Schedules and Statement of Financial Affairs, therefore, must contain false oaths made in connection with the above-captioned proceeding.

WHEREFORE, Pursuant to 11 U.S.C. § 727(a)(4), Plaintiffs asks that this Court enter judgment denying Defendant a discharge pursuant to 11 U.S.C. § 727(a) in the above-captioned case; and that this Court assess the costs of this action against Defendant.

## COUNT VII: 11 U.S.C. § 727(A)(5): FAILURE TO EXPLAIN LOSS OR DISSIPATION OF ASSETS

100. Plaintiff incorporates Paragraph 1-99 as if fully restated herein.

101. Defendant has not explained the loss or dissipation of assets, including the loss or dissipation of his net worth in excess of forty-six million dollars.

102. Defendant has also not explained the loss or dissipation of the more than three million dollars he diverted to his personal use from the construction loan from LSB.

103. Defendant has also not explained the loss or dissipation of the more than $690,000 he diverted to his personal use from the Reserve Account.

104. Further, Defendant disclosed unsecured claims of $230,982,315.57 on his Schedules, most of which relate to cash loans. Defendant has not explained the loss or disposition of more than two-hundred and thirty million dollars he received in loans.

WHEREFORE, Pursuant to 11 U.S.C. § 727(a)(5), Plaintiffs asks that this Court enter judgment denying Defendant a discharge pursuant to 11 U.S.C. § 727(a) in the above-captioned case; and that this Court assess the costs of this action against Defendant.

                              BELIN MCCORMICK, P.C.

                              By /s/ Matthew T. Cronin_____
                                  Matthew T. Cronin
                              666 Walnut Street Suite 2000
                              Des Moines, IA  50309-3989
                              Telephone:  (515) 283-4640
                              Telecopier: (515) 558-0640
                              mtcronin@belinmccormick.com

                              ATTORNEY FOR PLAINTIFFS

**B1040 (FORM 1040) (12/15)**

| **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER**<br>(Court Use Only) |
|---|---|

| **PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

### NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny
**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

**B1040 (FORM 1040) (12/15)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES ||||
|---|---|---|---|
| NAME OF DEBTOR ||| BANKRUPTCY CASE NO. |
| DISTRICT IN WHICH CASE IS PENDING || DIVISION OFFICE | NAME OF JUDGE |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** ||||
| PLAINTIFF | DEFENDANT || ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING || DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) <br><br>*/s/ Matthew T. Cronin* ||||
| DATE ||| PRINT NAME OF ATTORNEY (OR PLAINTIFF) |

### INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.