**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| In Re: | ) | Chapter 7 |
| | ) | |
| Daniel Eric Pettit | ) | Case No. 24-01387-lmj7 |
| | ) | |
|            Debtor. | ) | |
| Mary R. Jensen, Acting United States Trustee, | ) | |
| | ) | |
|            Plaintiff, | ) | Adversary Proceeding No. |
| vs. | ) | |
| | ) | |
| Daniel Eric Pettit | ) | |
| | ) | |
|            Defendant. | ) | |

**COMPLAINT OBJECTING TO DEBTOR'S DISCHARGE**

The Acting United States Trustee for Region 12 ("UST" or "Plaintiff"), by and through the undersigned Trial Attorney, in support of her Complaint to Deny Discharge, represents as follows:

**Jurisdiction**

1. The United States Trustee is an independent branch of the United States Department of Justice charged with the administration of bankruptcy estates pursuant to 28 U.S.C. § 581, *et. seq.*

2. The UST has standing to bring a complaint to deny the discharge of a debtor pursuant to 11 U.S.C. § 727(c)(1).

3. This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 & 1134 and 11 U.S.C. § 727(a). Venue in this Court is proper pursuant to 28 U.S.C. § 1409(a).

4. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

5. The Plaintiff consents to a final order and judgment by the United States Bankruptcy Court for

1

the Southern District of Iowa.

6. This Complaint is in connection with Daniel E. Pettit's chapter 7 case no. 24-01387-lmj7 ("Debtor" or "Defendant"), pending in the Southern District of Iowa.

## Introduction

7. Defendant was known as an entrepreneur, successful developer and founder of a faith-based nonprofit. Prior to the COVID-19 pandemic, he had many successful commercial and residential developments. He, through his many business entities, managed the finances of his businesses and pursued various investments. He exercised liberal use of business and personal accounts to fund his extravagant standard of living even as he experienced substantial losses. In January 2024, Defendant was jailed for contempt in connection with 3 civil court cases in which he was accused of raising millions of dollars from banks and investors for housing and commercial developments that were never completed. Financial documentation supports that prior to filing this bankruptcy case Defendant fled the country with no intention to return, contrary to his testimony at his 341 meeting. A nationwide bench warrant was issued on November 25, 2025, requiring Defendant to report for an additional 37-days jail time for contempt, but as of the date of this complaint, Defendant has failed to report. Defendant has failed to make truthful and accurate disclosures in his Bankruptcy Documents. He actively omitted or otherwise concealed his ownership interests and asset transfers from the case trustee, creditors, the United States Trustee, and this Court at his 341 meeting.

## Background

I.  **Defendant's Bankruptcy Documents**

8. Defendant commenced his bankruptcy case on September 25, 2024, by filing a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.

9. Defendant's Schedules, Declaration, and Statement of Financial Affairs ("SOFA") for

Individuals Filing for Bankruptcy are found at Docket Entry No. 20 in Defendant's above-captioned bankruptcy filing (collectively the "Bankruptcy Documents").

10. Larry Eide was appointed and acts as trustee in Defendant's bankruptcy case.

11. Defendant signed his Petition on September 25, 2024, under penalty of perjury (*See* Petition, doc. 1, p. 6).

12. Defendant signed his Amended Petition on October 9, 2024, under penalty of perjury (*See Amended* Petition, doc. 27, p. 6).

13. Defendant's Petition and Amended Petition indicate Defendant's address is 1265 Salm Drive, North Liberty , IA 52317.

14. Defendant signed his Schedules and SOFA and Declaration on August 9, 2024, under penalty of perjury (*See* Bankruptcy Documents, doc. 20, pp. 90, 107, 109, 115 of 137, respectively).

15. On Schedule I, Defendant reported that he is unemployed and his only source of income is $30.00 monthly from "Renewable Commissions from Allianz."

16. Defendant has not amended any of his Bankruptcy Documents.

**II.    Defendant's 341 Meeting**

17. On October 23, 2024, Defendant appeared and testified at his Section 341 meeting of creditors ("341 Meeting").

18. Trustee Eide initiated Defendant's 341 Meeting by placing Defendant under oath. During Trustee Eide's questioning of Defendant's financial affairs, the Defendant testified:

- That he had examined the Petition and Schedules before he signed them;
- That his Petition and Schedules were true and correct;
- That his Schedules disclosed all of Defendant's assets and debts;
- That, at the time of the 341 Meeting, Defendant's physical address was 5407 Oak Creek

3

Drive Northeast, Cedar Rapids, Iowa 52411.

- That, at the time of the 341 Meeting, Defendant was physically located in Sarasota, Florida;

- That, on the date of filing, Defendant only had an ownership interest in two bank accounts: a Chase account ending in 9572 and a Chime account; and

- That Defendant had no interest in any other bank accounts during any part of the one year prior to filing.

19. Trustee Eide instructed Defendant to advise his attorney, the Trustee, and the bankruptcy court if his address were to change further during the pendency of his case.

20. Trustee Eide concluded the 341 Meeting.

### III. The UST Investigation

21. The UST received information from third parties that suggested Defendant had omitted certain asset ownership interests in his Bankruptcy Documents and further failed to disclose such interest in his 341 testimony.

22. In furtherance of her investigation, the UST forwarded inquiry correspondence to Defendant dated October 25, 2024.

23. The UST also subpoenaed documents from Dupaco Credit Union ("DCU") on January 8, 2025.

#### a. Defendant's Bank Accounts

24. Schedule A/B, question 17 requires a debtor to disclose a legal or equitable interest in any checking, savings, or other financial accounts.

25. In response, Defendant disclosed one Chime checking account ending in 0236 and one JP Morgan Chase Bank checking account ending in 9572.

26. No other accounts were disclosed.

27. Defendant testified to the following at his 341 Meeting:

4

```
20            Mr. Pettit, back to you.  You provided
21   through your attorney bank statements for the Chase
22   checking account ending in 9572 and a Chime account.
23   Did you have ownership interest in any other accounts
24   during any part of the one year prior to filing?
25            DANIEL PETTIT:  No.  I don't believe so.
```

### i.  Dupaco Credit Union Checking Account - 3948

28. DCU produced bank statements related to checking account ending in 3948 in which Defendant held an interest in on the date of his bankruptcy filing.

29. Banking records show that Defendant consistently made purchases and ATM withdrawals in and around Monrovia, Liberia in the time period between August 15, 2024, and through October 13, 2024.

30. Banking records show that Defendant made purchases in and around Tanzania in the time period between October 15, 2024, and through October 21, 2024.

31. On October 22, 2024, the day before Defendant's 341 Meeting, banking records provided by DCU indicate Defendant made a purchase at the airport in Ghana.

32. On October 23, 2024, the date of Defendant's 341 Meeting, banking records provided by DCU indicate Defendant purchased in-flight internet services.

33. Upon information and belief Defendant was not in Sarasota, Florida, or in the United States of America, at the time of his 341 Meeting when he testified to his location.

34. The next day, October 24, 2024, banking records provided by DCU indicate Defendant purchased McDonalds in a shopping mall in Dubai, United Arab Emirates.

35. Defendant consistently made purchases and ATM withdraws in and around Dubai in the time period between October 24, 2024 and through December 18, 2024.

5

36. On November 25, 2024 a Nationwide Bench Warrant was issued related to Defendant's state court actions pending in the Iowa District Court for Polk County (Ashworth Investment Partners LLC v. Ashworth Apartments I, LLC, LACL155629; Meadows Capital Partners I, LLC v. Meadows Developers I, LLC, LACL155713; Meadows Capital Partners I, LLC and Ashworth Investment Partners, LLC v. Daniel E. Pettit, LACL155643). (See Exhibit A).

37. Upon information and belief at the time of this complaint Defendant has not returned to the United States to serve the remaining portion of his sentence imposed for civil contempt.

38. At no point has Defendant filed any amendments to his address, despite having been residing outside the country for at least one month prior to his bankruptcy filing and during the post-filing duration of his case.

39. Schedule A/B, question 17 requires Defendant to list all deposits of money Defendant had an interest in on the date of filing.

40. Defendant omitted from his Bankruptcy Documents any balance of money which he held in the DCU checking account 3948.

41. Banking records provided by DCU indicate that on the date of filing Defendant had a balance of $3,061.30 in checking account ending 3948.

42. Schedule A/B, question 16 requires Defendant to disclose whether Defendant had any cash on hand on the date of filing. Defendant responded "No" in response to question 16.

43. Banking records provided by DCU indicate that in the 60 days prior to filing his bankruptcy Defendant had taken out ATM cash withdrawals in excess of $13,000.00.

44. SOFA, question 4 requires a debtor to disclose whether Defendant had any income from any employment or operating a business in the last three years. Defendant responded "No" in response to question 4.

6

45. SOFA, question 5 requires a debtor to disclose whether Defendant had any income from any other source during the last three years, regardless of whether it was taxable income. Defendant responded "No" in response to question 5.

46. Banking records provided by DCU show "transfer deposits" coming into checking account 3948 in the amount of $32,316.24 in the 60 days prior to filing.

47. Upon information and belief, the source of the $32,316.24 in income is Susan Pettit, mother of the Defendant.

48. Banking records provided by DCU indicate that in the 90 days post-filing Defendant has received "transfers deposits" in the amount of $16,000.

49. Upon information and belief, the source of $16,000 in income is Susan Pettit, mother of the Defendant.

50. Upon information and belief, Defendant has access to additional undisclosed income or funds that are being distributed to Defendant incrementally to sustain Defendant's life abroad.

51. SOFA, question 13 requires a debtor to disclose whether Defendant gave any gifts with a total value of over $600 per person in the 2 years prior to filing. Defendant responded "No" in response to question 13.

52. Banking records provided by DCU show transfers coming out of checking account 3948 via Sendwave in the amount of $2,912.13 in the month prior to filing.

53. Upon information and belief Sendwave is an international money transfer service.

54. The recipient(s) of the Sendwave transfers remains unknown to the UST at this time.

55. Banking records provided by DCU indicate that checking account ending 3948 remained open as of the date of the subpoena issued by the UST.

### ii. Dupaco Credit Union Savings Account - 9176

56. DCU produced bank statements related to savings account ending in 9176.

57. Defendant held an interest in the DCU savings account ending in 9176 on the date of his bankruptcy filing.

58. Schedule A/B, question 17 requires Defendant to list all deposits of money Defendant had an interest in on the date of filing.

59. Defendant omitted from his Bankruptcy Documents any balance of money which he held in the DCU savings account 9176.

60. Banking records provided by DCU indicate that on the date of filing Defendant had a balance of $2,525 in savings account ending 9176.

61. Banking records provided by DCU show "transfer deposits" coming into savings account 9176 in the amount of $1,500 in the month prior to filing.

62. The source of the $1,500 in income is unknown to the UST at this time.

63. Banking records provided by DCU indicate that savings account ending 9176 remained open as of the date of the subpoena issued by the UST.

### b. Other Assets

64. SOFA, question 15 requires a debtor to disclose if Defendant has lost any assets due to theft, fire or other disaster in the year prior to filing. Defendant responded "Yes" in response to question 15, and further included this statement:

> See items scheduled in response to SOFA question #18 involving items which were stolen from debtor.

65. SOFA, question 18, as referenced by Defendant, requires a debtor to disclose if, within two years prior to filing, Defendant sold, traded, or otherwise transferred property to anyone other than in the

ordinary course of business. Defendant responded "Yes" in response to question 18.

66. In his response to SOFA, question 18 Defendant enumerated 28 specific transfers of his assets with estimated values in excess of $4,000,000.00.

67. At his 341 meeting, Trustee Eide asked Defendant about each of these transfers.

68. Defendant was unable to remember which if any of the items were stolen but testified to his knowledge of each of the transfers.

69. Defendant testified that most, if not all, of the transfers included in SOFA, question 18 were voluntary takings completed with Defendant's permission and for the purpose of partial payments on Defendant's debts to select creditors chosen at the Defendant's sole discretion.

70. In response to the UST's inquiry on the transfers included on SOFA, question 18, Defendant provided the following response:

> 15. For all transfers included on SOFA Part 7, Question 18:
>
>     a. Provide all facts and provide all documents or communications evidencing the disposition or retainage of such property.
>     b. Provide all facts and provide all documents or communications evidencing the value of such property.
>     c. If the property was sold or transferred:
>         i. Identify the property
>         ii. Identify the date of sale or transfer
>         iii. Identify the recipient
>         iv. Identify the amount of consideration received
>     d. Produce any police report filed related to the removal of the asset from Debtor's possession
>     e. Produce any insurance claim filed related to the removal of the asset from Debtor's possession
>
> **Response: Debtor is unable to produce this information at this time in that it was stored on his phone which has been in the possession of the Johnston Police Department since approximately September 2023 at which time it was seized in regards to a criminal investigation. Debtor did not maintain a back up and has no access to those records.**
>
> **The information provided in response to SOFA Part 7, Question 18 was provided from Debtor's memory as to the facts and circumstances as to the items referred to in that schedule.**

9

71. Defendant has provided no books, records, documentation or other recorded information to support the millions of dollars in transfers included on SOFA, question 18, or how those amounts were applied to his outstanding debts with the specific creditors allowed to enjoy in the takings.

72. SOFA, question 22 requires a debtor to disclose if Defendant has stored any property in a storage unit or place other than his home in the year prior to filing for bankruptcy. Defendant responded "No" in response to question 22.

73. In response to the UST's inquiry Defendant provided the following response:

> 27. Identify all handbags or purses purchased by Debtor or gifted to the Debtor in the two years prior to the bankruptcy filing with a cost of over $200. Identify whether Debtor still retains the asset or if it was sold or transferred. For any handbags sold or transferred in the two years prior to the bankruptcy filing, Debtor should identify the item sold, date of sale, how the item was marketed, the buyer, amount of sale.
>
> **Response: Debtor is unable to provide an accurate list of the items identified in this Inquiry as the records regarding such purchases is located upon a computer he no longer has possession of. Debtor states:**
>
> **I do not have an accurate list, that computer is not in my possession. Guessing at best what is left- handbags left are in possession of Kayla Gueringer. Has designer clothes as well in her possession.**

74. In response to the UST's inquiry response Defendant provided this response to items he is purportedly holding in a "vault":

> 35. Identify the physical address of the "vault" located in Nevada and provide an inventory list of all items held at that location at any time since January 1, 2022.
>
> **Response:**
> **It is not a vault, it is a house where there is a vault installed which is 1366 Robarb Street Las Vegas, NV 89135- items include clothing, jewelry, handbags, and watches. Also, a 2022 BMW car. Unknown what remains as have not been in contact with person with items for over one year.**

75. Related to the "vault" Defendant testified to the following at his 341 Meeting of Creditors:

10

```
14              MS. QUINN-HANSE:  There was some references
15    in one of the state court actions to a vault.  Do you
16    have access to a vault?
17              DANIEL PETTIT:  I don't have access, but
18    it's a -- it's like a storage facility.  Yeah.  I went
19    through some of the items that were listed to make
20    sure that's clear that are in Las Vegas, yes.  I did
21    (inaudible) a hundred percent accurate.
22              MS. QUINN-HANSE:  So there are still items
23    in Las Vegas?
24              DANIEL PETTIT:  I believe so, yes.  As far
25    as I know.
```

Page 93
```
1               MS. QUINN-HANSE:  And do you know what
2     those items are that still remain in Las Vegas?
3               DANIEL PETTIT:  I have a list.  I don't
4     have it in front of me, but I gave it to Dave.  And to
5     Mike Carroll.
```

## COUNT I
## DENIAL OF DISCHARGE UNDER 11 U.S.C. § 727(a)(4)(A)

76. Plaintiff realleges and incorporates each of the allegations contained in paragraphs 1 through 75 above, inclusive, as if set forth fully herein.

77. 11 U.S.C. § 727(a)(4)(A) provides:

> (a) The court shall grant the debtor a discharge, unless –
> (4) the debtor knowingly and fraudulently, in or in connection with the case –
> (A) made a false oath or account;

78. Defendant knowingly and fraudulently made false oaths on his Petition, Schedules, and SOFA, as follows:

11

      a. On Schedule A/B, Defendant omitted his ownership interest two Dupaco Credit Union accounts;
      b. On his SOFA, Defendant omitted receipt of income from any sources in the year prior to filing;
      c. On his SOFA, Defendant omitted gifts to another in an amount of more than $600;
      d. On his SOFA, Defendant failed to disclose his interest in property that was stored in a place other than his home;

79. Defendant knowingly and fraudulently made the following false statements under oath during his Meeting of Creditors:

      a. That the contents of his Petition, Schedules, and SOFA were true and correct;
      b. That those documents included all of his assets and debts;
      c. That Defendant did not have an interest in any bank accounts other than the ones listed on his Bankruptcy Documents;
      d. That Defendant's physical location was in Sarasota, Florida at the time of his 341 Meeting;

80. Defendant's false oaths set forth above were material omissions regarding Defendant's property and property of the estate.

81. As a result of Defendants' false oaths, Plaintiff is entitled to an order denying Defendant's discharge under 11 U.S.C. § 727(a)(4)(A).

## COUNT II
## DENIAL OF DISCHARGE UNDER 11 U.S.C. § 727(a)(3)

82. Plaintiff hereby incorporates and restates paragraphs 1 through 75 as if fully stated herein.

83. In accordance with 11 U.S.C. § 727(a)(3), the Court shall grant a debtor a discharge unless:

the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]

84. As set forth above, Defendant, by his own admission through his response to the UST's inquiry has failed to provide, and thus either concealed, destroyed, falsified, or failed to keep information, including books, documents, records and papers from which his financial condition or business transactions might be ascertained.

85. Defendant's actions or failure to act as described herein do not appear justified under all of the circumstances of this case. Defendant is a sophisticated businessperson. As a result of Defendant's conduct, Plaintiff is entitled to an order denying Defendant's discharge under 11 U.S.C. § 727(a)(3).

## COUNT III
## DENIAL OF DISCHARGE UNDER 11 U.S.C. § 727(a)(5)

86. Plaintiff hereby incorporates and restates paragraphs 1 through 75 as if fully stated herein.

87. In accordance with 11 U.S.C. § 727(a)(5), the Court shall grant a debtor a discharge unless:

the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

88. Despite requests, Defendant has failed to explain satisfactorily with any supporting documentation, the loss or disposition of designer clothing, art work, sports memorabilia, jewelry, handbags and watches.

89. As a result of Defendant's conduct, the plaintiff is entitled to an order denying Defendant's discharge under 11 U.S.C. § 727(a)(5).

## COUNT IV
## DENIAL OF DISCHARGE UNDER 11 U.S.C. § 727(a)(2)(A)

90. Plaintiff hereby incorporates and restates paragraphs 1 through 75 as if fully stated herein.

91. In accordance with 11 U.S.C. § 727(a)(2)(A), the Court shall grant a debtor a discharge unless:

the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed property of the estate, property of the debtor, within one year before the date of the filing of the petition

92. At the time he signed his Bankruptcy Documents, and at the time of his 341 meeting, Defendant knew he had an ownership interest and was actively utilizing both a checking and savings account at Dupaco Credit Union.

93. By failing to disclose ownership of the accounts under penalty of perjury and while under oath

at his 341 meeting or prior to the meeting, Defendant has concealed the financial assets from the bankruptcy trustee and his estate.

94. As a result of Defendant's conduct, the Plaintiff is entitled to an order denying his discharge under 11 U.S.C. § 727(a)(2)(A).

**General**

92. Plaintiff has set forth those provisions of 11 U.S.C. § 727 which, based on the evidence currently available, Defendant is alleged to have violated.  In the event that discovery in this case discloses additional relevant information, Plaintiff specifically reserves the right to seek to amend this Complaint, in accordance with Federal Rules of Civil Procedure, Rule 15, made applicable to this complaint via Federal Rules of Bankruptcy Procedure, Rule 7015.

WHEREFORE, the Acting United States Trustee, as Plaintiff, requests this Court enter an order and judgment denying Defendant's discharge under 11 U.S.C. §§ 727(a)(2)(A); 727(a)(3); (a)(4)(A); and (a)(5), together with such other and further relief as the Court deems just and equitable.

**Mary R. Jensen**
Acting United States Trustee
Region 12

By:/s/ Alexandria Quinn-Hanse
**Alexandria Quinn-Hanse**
ID # AT0013462
Federal Building, Room 793
210 Walnut Street
Des Moines, Iowa 50309-2108
Ph: (515) 284-4985
Allie.Quinn-Hanse@usdoj.gov